# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| NGA TRUONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **CIVIL ACTION** |
| v. ) | **NO. 12-12222-TSH** |
| ) | |
| KEVIN PAGEAU, JOHN DOHERTY, ) | |
| JOHN DOE, GARY J. GEMME, ) | |
| MICHAEL V. O'BRIEN, and THE CITY ) | |
| OF WORCESTER, MASSACHUSETTS ) | |
| ) | |
| Defendants/Third-Party ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| EDWARD P. RYAN, JR., ) | |
| ) | |
| Third-Party Defendant. ) | |
| _____) | |

**MEMORDUM OF DECISION ON MOTION OF THIRD-PARTY DEFENDANT EDWARD P. RYAN, JR. TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE DEFENDANTS' THIRD PARTY COMPLAINT (Docket No. 20)**

**November 19, 2013**

HILLMAN, D.J

### Nature of the Case

The Plaintiff, Nga Truong ("Truong" or "Plaintiff") was charged with murdering her 13 month old son and held on bail for 23 months until her case was *nolle prosequid* by the Worcester County District Attorneys' office. She has sued the City of Worcester and various members of its police force for claims arising out of the events of her arrest and detention. The

City has asserted a third-party claim against her criminal defense attorney, Edward P. Ryan ("Attorney Ryan" or "Ryan") alleging that Ryan was negligent in his prosecution and filing of the motion to suppress evidence that led to the termination of the criminal case. Ryan seeks to dismiss or strike the third-party complaint. For the reasons set forth below, Ryan's motion is granted.

## **Background**

The following facts are taken from the Plaintiff's complaint and other relevant pleadings on file in this case.

On November 30, 2008, 13 month old Khyle Truong was found unresponsive in his crib and was rushed to the hospital where he died. The next day the Worcester police questioned his mother, the Plaintiff Truong, who was then 16 years old. After several hours of questioning, the Plaintiff stated that she had smothered the baby. On December 3, 2008, Truong was charged with murder. On that date Attorney Ryan filed an appearance on her behalf and she was held without bail. The charges remained pending in the District Court until March 17, 2009 when a Worcester County Grand Jury returned an indictment charging her with murder. Truong was arraigned in the Worcester Superior Court on March 31, 2009. On September 17, 2010 Ryan filed a motion to suppress the Truong's statements to the police. The hearing on that motion was held on December 29, 2010 and on February 25, 2011 a judge of the Superior Court granted that motion. The judge ruled that the Plaintiff was in custody at the time that she made the statements, that she had not waived her Miranda rights, and that her statement was not voluntary. On August 23, 2011 the Commonwealth filed a *nolle prosequi*, all charges against Truong were dismissed, and she was released from custody.

On November 30, 2012 the Plaintiff filed a seven count complaint naming as defendants the City of Worcester, police officers Pageau, Doherty, and Doe, Police Chief Gemme, and City Manager O'Brien ("Defendants").  The complaint alleges federal civil rights claims (42 U.S.C. s. 1983)  against Officers Pageau, Doherty, and Doe (Count I),  Chief Gemme and  City Manager O'Brien (Count II), and the City of Worcester (Count III).  Count IV alleges a violation of the state civil rights act (M.G.L. C. 12 s. H-I) against Officers Pageau and Doherty. Count V alleges false arrest and false imprisonment against Officers Pageau, Doherty, and Doe. Count VI (labeled Count IV) alleges malicious prosecution against Officers Pageau, Doherty, Doe, and Chief Gemme, and Count VII alleges intentional infliction of emotional distress against Officers Pageau, Doherty, and Doe.

On February 4, 2013 the Defendants filed their answer to the complaint and asserted a third party claim against Ryan for contribution under M.G.L. C. 231B.  They allege that Ryan should have filed his motion to suppress sooner than 23 months after the police questioned the Plaintiff and that that delay breached Ryan's duty to his client and increased the time that the Plaintiff was incarcerated.  The Plaintiff now moves to dismiss the third party claim on the grounds that the third party complaint does not state a plausible claim for relief, that there is no right to contribution under 42 U.S.C. s. 1983, that there is no right to contribution on the state law claims, and that the third party complaint should be stricken under F.R.C.P. 14(a)(4)

**Standard Of Review**

In a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.,* 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999)).  In deciding a motion to dismiss, the Court may consider

materials attached to or incorporated by reference in the complaint, or that are a part of the pleading itself. *Trans–Spec Truck Serv. v. Caterpillar,* 524 F.3d 315, 321 (1st Cir.2008). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). However, the Court need not consider "bald assertions [or] unsupportable conclusions." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir. 1996). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Twombly,* 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC,* 521 F.3d 76, 84 (1st Cir.2008) (quotations and original alterations omitted).

After a third-party claim is asserted, any party may move to strike the third-party claim. Fed.R.Civ.P. 14(a)(4). The Court has "considerable discretion" in deciding whether to strike a third party complaint. *Old Republic Ins. Co. v. Concast, Inc.,* 99 F.R.D. 566, 568 (S.D.N.Y. 1983). When making this decision, the Court should look to see if the claim is "obviously unmeritorious and can only delay or prejudice the disposition of plaintiff's claim." *Perez Cruz v. Fernandez Martinez,* 551 F. Supp. 794, 799 (D.P.R. 1982) (citing Advisory Committee Note on the 1963 Amendment to Rule 14(a)); *see also* Wright and Miller, Practice in Third-Party Actions—Time and Nature of the Motion, 6 Fed. Prac. & Proc. Civ. § 1454 (3d ed.) ("the court retains its discretion to strike the third-party claim if it is obviously unmeritorious and can only delay or prejudice the disposition of plaintiff's claim.").

**<u>Discussion</u>**

*Whether the Third Party Complaint states a plausible claim for relief*

The Third Party Complaint alleges that "shortly after the arraignment . . . Ryan made statements to the media that were critical of the questioning of the Plaintiff and raised issues as to the validity of her confession." Despite having expressed reservations about the legality of the Plaintiff's confession, Ryan did not file the motion to suppress that confession until 23 months later. This delay, Defendants allege, was a breach of his duty to his client and "increased the time Plaintiff was incarcerated prior to the Superior Court's decision granting the motion to suppress."

Ryan argues that the mere passage of time between the initiation of criminal proceedings and the filing of the motion to suppress does not amount to legal malpractice even where counsel was aware of "the purported deficiencies in the questioning." The question thus becomes whether the delay as alleged in the complaint sets forth "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To succeed on a claim of legal malpractice, a plaintiff must prove that the attorney "committed a breach of the duty to use reasonable care, that the plaintiff suffered actual loss, and that the attorney's negligence proximately caused such loss." *Atlas Tack Corp. v. Donabed*, 47 Mass. App. Ct. 221, 226 (1999); *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, 25 Mass.App.Ct. 107, 111 (1987). Using reasonable care means "act[ing] with a proper degree of attention…and to the best of [one's] skill and knowledge." *Colucci*, 25 Mass.App.Ct. at 111. It does not mean attorneys must be "perfect or infallible, and it does not demand that they always secure optimum outcomes for their clients." *Coastal Orthopaedic Inst., P.C. v. Bongiorno*, 61 Mass. App. Ct. 55, 59 (2004) (quoting *Meyer v. Wagner*, 429 Mass. 410, 419 (1999)). The

standard for legal malpractice in Massachusetts has been likened to the standard for ineffective assistance of counsel, that is, that the lawyer's conduct was "measurably below that which might be expected from an ordinary fallible lawyer." *Com. v. Rondeau*, 378 Mass. 408, 412 (1979) (citing Restatement (Second) of Torts s 299A (1965); *Moore v. United States*, 432 F.2d 730, 736 n.24, 737 n.27 (3d Cir. 1970)).

The Defendants urge the Court to adopt a standard for legal malpractice that is applied in ineffective assistance of counsel cases, that when tactical or strategic judgments are at issue, one must show counsel's conduct was manifestly unreasonable. *Com. v. White*, 409 Mass. 266, 272 (1991); *Com. v. Adams*, 374 Mass. 722, 728 (1978). This standard is not appropriate. First, it has only been applied in ineffective assistance of counsel cases. *See, e.g.*, *White*, 409 Mass. 266; *Adams*, 374 Mass. 722; *Rondeau*, 378 Mass. 408. Here, the gravamen of the third party complaint is that Attorney Ryan took too long to file the motion to suppress. While it can be fairly argued that the delay was for tactical or strategic reasons, it can also be argued that the passage of time was necessary for Ryan to research and prepare the motion to suppress and not for tactical or strategic reasons. Therefore, Attorney Ryan's conduct should be analyzed under the lower standard of whether he acted with reasonable care.

To survive a motion to dismiss, the third party complaint must allege "a plausible entitlement to relief." *Twombly*, 550 U.S. at 555. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679; *Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011). The complaint does not allege facts which, taken as true, demonstrate there is more than a "sheer possibility" that Ryan did not act with reasonable care. *Iqbal*, 556 U.S. at 687.

Instead, the complaint merely concludes that Ryan's delay in filing the motion to suppress was a breach of the duty he owed Truong. After review of the public docket entries in the criminal case and Superior Court Judge Kenton-Walker's well reasoned Opinion and Order suppressing the Plaintiff's statement, I conclude that the counterclaim does not set forth a plausible entitlement to relief.

The fact that it took Attorney Ryan 23 months to seek suppression highlights the difficulty of his task, not its deficiencies. In arriving at this conclusion I draw upon "official public records . . .documents central to plaintiffs' claim [and] . . . documents sufficiently referred to in the complaint." *Miss. Pub. Empl. Ret. Sys. v. Boston Sci. Corp*. 523 F.3d 75, 86 (1st Cir. 2008); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (considering court orders when ruling on a motion to dismiss and noting a court may look to "documents the authenticity of which are not disputed by the parties" and "official public records," to rule on such a motion); *Mack v. S. Bay Beer Distributors, Inc*., 798 F.2d 1279, 1282 (9th Cir. 1986) abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, (1991) ("on a motion to dismiss a court may properly look beyond the complaint to matters of public record").

First, it is important to note that Ryan's ability to seek suppression did not arise until the criminal proceedings were instituted by indictment in the Superior Court. From December 2, 2008 until March 31, 2009, Truong's case was pending in the Worcester Central District Court, a court which had no final jurisdiction over the charges. Starting on the date of his client's arraignment in Superior Court, March 31, 2009, the public docket reflects that Ryan diligently defended his client by investigating the factual underpinnings of the charge against her and preparing for, and filing, the successful motion to suppress. At Truong's arraignment Ryan filed two motions seeking funds to secure a forensic pathologist and a licensed social worker (papers

#6 & 7).  In May he sought additional funds for investigative services and a psychological expert (papers 9 & 10).  One month later on June 29th, he sought funds to secure an expert in juvenile confessions (paper #11).  In November of 2009 he again sought funds for the services of a forensic pathologist (paper #12).  In January of 2010, he sought and received an order for the production of medical records (paper #13).  The docket reflects that those records were not produced by UMass Memorial until almost 3 months later on March 12th. On May 17th and June 28th he sought more funding for a psychological expert (papers #13 &14) and on September 1, 2010 he filed a motion for funds to enhance the video tape of the Defendant's interrogation by the Worcester Police (paper #18).  The Plaintiff's Motion to Suppress was filed on September 23rd, just over three weeks later.

   The Defendants make much of Attorney Ryan's statement in December 2008 "that was critical of the questioning of the Plaintiff and raised issues as to the validity of her confession" (Third Party Complaint p.8. Dx #8).   Since Ryan was aware of the constitutional deficiencies of Truong's questioning and waited 23 months to file the motion to suppress, the Defendants conclude he committed malpractice.  This argument ignores the above information in the public docket that clearly evidences Ryan's methodical preparation for his attack on the voluntariness of her confession. These motions don't happen in a vacuum. They require legal acumen and painstaking preparation.  It is beyond dispute that a parent charged with murdering their child implicates complex legal and social issues.  That Ms. Truong was only 16 years old added significant difficulty to an already difficult defense  It is unfortunate that it took 19 months to file the motion, but to file the motion prematurely would be even more unfortunate, if not reckless. There is absolutely no evidence of any deleterious conduct on Ryan's part; rather, his numerous applications to the court for funding for various investigators and experts demonstrate the

continuing time, effort, and thought he put into the motion to suppress. As a result, the Defendants cannot, and do not, allege any such deleterious conduct; their complaint rests on the bald conclusion that a 23 month delay in filing constituted a breach of Attorney Ryan's duty. To allow a malpractice complaint that merely alleges the passage of time to move forward would have a chilling effect on the administration of justice and would cause premature filings. The Defendants' third-party complaint, therefore, fails to state a plausible claim and is dismissed.

*Whether a Claim for Contribution may be Asserted in a s. 1983 Action*

Even if Defendants third-party complaint stated a colorable claim for relief, it would be dismissed as to Plaintiff's s. 1983 claim because a claim for contribution may not be asserted in a s. 1983 action. While there is no controlling precedent in the First Circuit on this issue, this Court agrees with the majority of courts holding contribution is not available in actions brought pursuant to s. 1983. *See, e.g. Crews v. Cnty. of Nassau*, 612 F. Supp. 2d 199, 213 (E.D.N.Y. 2009) ("this Court agrees with the clear majority of courts that, in general, permitting a right of contribution under Section 1983 would conflict with the policies underlying the statute and is, therefore, inapplicable to defendants in Section 1983 actions."); *Frantz v. City of Pontiac*, 432 F. Supp. 2d 717, 721-22 (E.D. Mich. 2006) (city did not have right of contribution under s. 1983 because s. 1983 does not authorize right of contribution); *Katka v. Mills*, 422 F. Supp. 2d 1304, 1307-1310 (N.D. Ga. 2006) ("there is no right of contribution under s. 1983"); *Hepburn v. Athelas Inst.*, 324 F. Supp. 2d 752, 755-760 (D. Md. 2004) (finding no right to contribution in s. 1983 cases as "such a right is inconsistent with s. 1983"); *T.C.I. Cablevision v. City of Jefferson*, 604 F. Supp. 845, 847 (W.E. Mo. 1984) (finding no right of contribution under s. 1983). While there are courts that continue to find a right of contribution in s. 1983 cases, these cases come almost entirely from the Third Circuit which continues to be ruled by *Miller v. Apartments and*

*Homes of New Jersey, Inc*., a case which found an implied right to contribution as a matter of federal common law. 646 F.2d 101, 108 (3d Cir. 1981). Though never explicitly overturned, and thus still good law in the Third Circuit, *Miller* is not followed by other Courts as its holding has been called into question by subsequent Supreme Court cases. *Northwest Airlines v. Transport Workers Union*, 451 U.S. 77, 96, 98, 101 S.Ct. 1571 (1981) (finding no general federal right to contribution and not adding a right to contribution under the Equal Pay Act and Title VII); *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 642, 101 S. Ct. 2061 (1981) (finding no general federal common-law right to contribution).

A right to contribution may be created either by statute, either explicitly or by implication, or through the federal common law. *Northwest Airlines*, 451 U.S. at 90. As the Supreme Court has found no general federal common-law right to contribution, a right to contribution under s. 1983 may only exist by statute. *Northwest Airlines*, 451 U.S. at 90, 96. Nothing in s. 1983 nor its legislative history appears to create the right, nor do the parties point to anything that suggests otherwise. *See Crews*, 612 F. Supp. 2d at 210 (noting that neither s. 1983 nor its legislative history suggest the right of contribution is available in s. 1983 cases). Therefore, neither the federal common law nor the relevant statute provide for the right to contribution. When federal law does not create suitable remedies in civil rights actions, however, 42 U.S.C. s. 1988 permits federal courts to furnish such remedies by looking to the common law as modified by state law, so long as such remedies are "not inconsistent with the Constitution and laws of the United States." 42 U.S.C. s. 1988(a).

When no suitable federal law exists, as it does not in the case of the right to contribution under s. 1983, "the relevant state law must be compared with principles underlying Sections 1983 and 1988." *Mason v. City of New York*, 949 F. Supp. 1068, 1077 (S.D.N.Y. 1996). "If

there is no inconsistency between these two bodies of law, the state law solution to the problem will be applied. If there is an inconsistency, the state law must be rejected, and this court must fashion an appropriate remedy to carry out the congressional purposes behind the civil rights legislation." *Goad v. Macon County, Tennessee*, 730 F.Supp. 1425, 1426 (M.D.Tenn. 1989). When determining whether there is an inconsistency "courts must look not only at particular federal statutes and constitutional provisions, but also at the policies expressed in [them]. Of particular importance is whether application of state law would be inconsistent with the federal policy underlying the cause of action under consideration." *Robertson v. Wegmann*, 436 U.S. 584, 590, 98 S.Ct. 1991 (1978)

In this case, state law provides that "where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them." M.G.L. c. 231B s. 1(a). This statute provides for a general right of contribution for torts claims, though it is not clear either from the statute or the case law that this applies to civil rights claims. On the other hand, "[t]he policies underlying s. 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson*, 436 U.S. at 590-91.  Thus Congress enacted s. 1983 not only to compensate those injured by civil rights violations, but also to deter state officials from committing those violations.  Allowing for third-party contribution in s. 1983 reduces deterrence by allowing defendants to potentially offset some of their liability and also may diminish a plaintiff's compensation if the third-party defendant is insolvent.  As such, this Court agrees with the numerous courts that have found that permitting contribution in s. 1983 actions would conflict with the policies behind s. 1983 and therefore should not be permitted, even if M.G.L. c. 231B applies to civil rights claims. *See, e.g. Hepburn v. Athelas Inst.*, 324 F. Supp. 2d at 759

("Section 1983's twin goals of compensation and deterrence are not furthered by reducing the defendants' costs of violations while placing the risk of an insolvent defendant on the plaintiff."); *Mason,* 949 F. Supp. at 1079 ("contribution among joint tortfeasors in Section 1983 cases would conflict impermissibly with the statutory goal of deterrence and is impermissible under the third prong of the Section 1988 test.").

*Ryan's Additional Arguments*

Ryan contends that the Defendants contribution claim for the state law claims should be dismissed because there is not right to contribution on these facts under M.G.L. c. 231B. He also asks this Court to strike the Defendants' third-party complaint pursuant to rule 14(a)(4) because the contribution claim will delay and prejudice the adjudication of the Plaintiff's claims. As the Defendants' complaint will be dismissed in full for failure to state a plausible claim, these additional issues raised by Ryan need not be reached.

## **Conclusion**

For the foregoing reasons, the Third-Party Defendant's Motion to Dismiss Defendants' Third-Party Complaint (Docket. No. 20) is **granted**.


SO ORDERED.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**