UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NGA TRUONG,       )<br>    Plaintiff,      )<br>                           )<br>    v.              )<br>                           )<br>KEVIN PAGEAU, JOHN DOHERTY,   )<br>THOMAS GAFFNEY, GARY J.       )<br>GEMME, MICHAEL V. O'BRIEN and )<br>THE CITY OF WORCESTER,        )<br>MASSACHUSETTS                 )<br>    Defendants.   ) | FIRST AMENDED COMPLAINT<br>AND DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. This is a civil rights action for damages. The complaint alleges that officers of the Worcester Police Department, acting pursuant to customs, policies and practices of the City of Worcester and its Police Department, arrested the plaintiff without probable cause, coerced her to confess to the murder of her own infant son and maliciously prosecuted her, causing her to be unlawfully imprisoned for nearly three years, all in violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Article 12 of the Declaration of Rights of the Massachusetts Constitution. She also asserts common law claims against the individual Defendants for false arrest, malicious prosecution and intentional infliction of emotional distress.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Massachusetts Civil Rights Act, M.G.L. c. 12 , §§11H-I, and the Constitution and common law of the Commonwealth of Massachusetts. Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction over plaintiff's state law claims is authorized by 28 U.S.C. § 1367.

## PARTIES

3. Plaintiff Nga Truong is and was at all relevant times a citizen of the United States. She is a resident of the City of Worcester, Massachusetts.

4. Defendant Kevin Pageau is and was at all times relevant to the allegations of this complaint a duly appointed police detective in the Police Department of the City of Worcester, holding the rank of sergeant.

5. Defendant John Doherty is and was at all times relevant to the allegations of this complaint a duly appointed police detective in the Police Department of the City of Worcester.

6. Defendant Thomas Gaffney is and was at all relevant times a duly appointed police officer in the Police Department of the City of Worcester.

7. Defendant Gary J. Gemme was at all relevant times the duly appointed and acting Chief of the Police Department of the City of Worcester. He is sued individually and in his official capacity.

8. Defendant Michael V. O'Brien was at all relevant times the duly appointed and acting City Manager of the City of Worcester. He is sued individually and in his official capacity.

9. Defendant City of Worcester is a municipal corporation organized under the laws of the Commonwealth of Massachusetts.

10. At all times relevant to the allegations of the complaint, each of the Defendants was acting under color of the laws of the Commonwealth of Massachusetts and the City of Worcester.

**FACTS**

11. Plaintiff Nga Truong ("Nga") was born on December 3, 1991. In November 2008, Nga then sixteen years old, and her thirteen-month old son Khyle were living in the apartment of her mother, Van Truong ("Van"), on Henderson Avenue in Worcester.

12. Khyle was born in November 2007, when Nga was fifteen. He was not a healthy child. He had been born four weeks prematurely and had spent the first three weeks of his life in a neonatal intensive care unit. He had serious and chronic respiratory problems. His medical records showed that he was hospitalized at the age of three months and again at five months for treatment of serious respiratory conditions, including bronchiolitis and respiratory syncytial virus (RSV). He was seen in the emergency room at six months and again at eleven months for respiratory distress, possibly resulting from pneumonia and was being treated for asthma from the age of five months. In late November 2008, Khyle

fell ill with strep throat and bronchitis. He had run a fever but seemed to be improving. He was not. On the morning of November 30, 2008, Nga observed that Khyle did not respond when she attempted to wake him and was not breathing.

13. After attempting to revive Khyle, the family called 911 to obtain emergency medical assistance. Responding to the call and arriving at the apartment at about 10:40 a.m., a Worcester police officer administered CPR but was unable to revive Khyle. Accompanied by Nga and her mother, Khyle was taken by ambulance to St. Vincent's Hospital where he was pronounced dead at 12:01 P.M.

14. In accordance with established policies and procedures of the Worcester Police Department, Khyle's death was treated from the outset as a criminal matter rather than a personal tragedy. Even as efforts were being made to revive Khyle, Defendant Pageau was assigned by the Worcester Police Department to lead a criminal investigation of Khyle's death. Investigating officers were immediately dispatched to the Truong apartment and to the hospital to collect evidence.

15. Without probable cause, or even a basis for suspicion of criminal activity, Defendant Pageau directed an officer from the Worcester Police Crime Scene Unit to go to the plaintiff's home and, consistent with the practice and policy of the Worcester Police Department, to take photographs and to seize the child's toys and clothing. A second officer was dispatched to St. Vincent's Hospital, having been assigned by Defendant Pageau "to assist in the death investigation of the infant victim."

16. Shortly after 11 a.m., Defendants Pageau and Doherty, along with another detective, arrived at the Truong apartment. Pageau remained at the apartment for two hours where he examined Khyle's crib, observed the conditions in the apartment and personally supervised the search and seizure of various items.

17. Later that same day, Defendant Pageau spoke briefly with Nga and her mother, and Defendant Doherty spoke with Nga's boyfriend, Edwin Vasquez, who had been a guest at the Truong apartment. Pageau did not suggest that they were suspected of criminal conduct and did not at that time advise them of their Miranda rights. Pageau also obtained records of the Department of Children and Families concerning the Truong family, and, still without a warrant, directed the Crime Scene Unit to return to the apartment and collect additional evidence, and obtained the results of the autopsy, which did not disclose the cause of death.

18. As a result of their inquiries and observations on November 30, 2008, Defendants Pageau and Doherty had been informed that:

   a. Khyle had been born prematurely and had been a neonatal intensive care unit for three weeks following birth. He had a history of bronchial problems as a result of the premature birth and was being treated for asthma. At the time of his death, he had been ill and had a high fever;

   b. There was vomit on Khyle's face and what appeared to be vomit on his shirt and on the bedding in his crib several stuffed animals found in the crib;

   c. Approximately one hour after being removed from the apartment, Khyle's body temperature was measured at St, Vincent's Hospital as 101 degrees;

   d. When Nga was 9 years old, her mother, Van Truong, had left her and her brother alone overnight with their 3 month old baby brother. Nga had found the baby bleeding through his nose and cold in the morning and had carried the baby to a neighbor's home. The baby had died, apparently of SIDS. (Sudden Infant Death Syndrome);

19. On the following day, an autopsy was performed. The pathologist who performed the autopsy and signed the death certificate deferred determination of the cause of Khyle's death pending a toxicology report. The death certificate described the immediate cause of death as "pending." Defendants Pageau and Doherty were informed that the autopsy had been completed and that no cause of death had been determined.

20. Based only on the limited information produced by their investigation, Defendants Pageau and Doherty determined, after consultation with Defendant Gaffney and others, that Nga had murdered her own child by suffocating him and set out to force her to confess to that crime.

21. On December 1, 2008, Pageau and Doherty returned to the Truongs' apartment for the purpose of bringing Nga, Van Truong and Edwin Vasquez to the police department for questioning. The two Defendants detectives did not inform any of the three of their Miranda rights at that time. Pageau and Doherty separated Nga from her mother and Edwin Vasquez, leaving her at the Henderson Street apartment while they took the others to the police station.

22. Van Truong arrived at the police station at approximately 11:00 a.m. and was interviewed at the Detective Bureau by Defendants Pageau and Doherty for several hours. In the course of their questioning of Van Truong, Pageau and Doherty told her that Nga was responsible for Kyle's death, but they did not discuss with her Nga's Miranda rights.

They did not ask her permission to question Nga.  They did not inform her that Nga could consult with her or with another interested adult before being interrogated.   They did not provide her with an opportunity to speak with her daughter before they began Nga's interrogation.

23. Because Nga had remained at her home and had not accompanied her mother to the police station, Pageau and Doherty sent a police officer to bring Nga there for interrogation.   Acting at their direction, the officer went the family's apartment to take Nga to the station.  She was not informed at that time that she was not required to go with the officer .

24. Arriving at the Worcester Police Department at approximately 1:30 p.m., Nga was brought directly into the building so that she would not see or have an opportunity to consult with her mother and was immediately taken to a closed windowless interrogation room at the Worcester Police Department where she was met by Defendants  Pageau and Doherty.

25. Although Defendants Pageau and Doherty knew that Nga was only sixteen years old, that she was distraught as a result of the death of her child and that she had been coercively detained for interrogation, they not only failed to provide Nga with an opportunity to consult either with her mother, an interested adult or an attorney before attempting to secure from her a waiver of her Miranda rights, they actively worked to prevent such consultation.

26. The interrogation of Nga which followed over the course of the next few hours was intended from the outset to coerce a confession from her through threats, intimidation, false statements and false promises.

    a. The interrogation was held in a small, closed and windowless room.  Nga was confronted by Pageau and Doherty, two older and much larger men who spoke with absolute authority, their tone becoming increasingly aggressive as the interrogation proceeded, yelling and using abusive language.  Her requests to terminate the interrogation were denied.

    b. Pageau and Doherty falsely stated that they knew that Nga had killed her baby brother when she was only nine years old when they knew that the cause of his death was Sudden Infant Death Syndrome, and they mocked her when she told them the cause of his death.

    c. Pageau and Doherty supplied the scenario of Khyle's death by smothering that they wanted her to admit. They falsely stated again and again that there was medical evidence Khyle had been smothered, when they knew the cause of death had not been determined, and said that only Nga could have been responsible. They falsely described the meaning of the autopsy report. They falsely characterized Khyle as a healthy baby when in fact he had chronic medical conditions and had been ill.

    d. Pageau and Doherty falsely promised her that admitting she had smothered Khyle allow her to "get help" because she was a juvenile and confessing to the crime would allow her younger brothers to be removed from her mother's home where their care was neglected.

    e. Pageau and Doherty falsely promised her that she would be treated as a juvenile if she confessed to murdering her child.

    f. Pageau and Doherty falsely told her that she could receive lenient treatment only if she admitted to murdering her child.

27. Throughout the interrogation by Pageau and Doherty, Nga consistently and unequivocally denied that she had killed Khyle. But after two hours, having been told that she was not free to leave and having been reduced to tears and overwhelmed by the coercion, intimidation, and false statements by Defendants Pageau and Doherty, and induced by their false promises of leniency and help for her brothers, Nga stated that she had smothered Khyle.

28. In the course of the interrogation, Defendant Pageau periodically left the room to consult with their commanding officer in the Worcester Police Department Detective Bureau, Defendant Thomas Gaffney. Defendants Gaffney and Gemme were informed of the details of the investigation and knew and approved of the coercive measures taken by Pageau and Doherty to obtain Nga's statement.

29. Nga's statement that she had smothered Khyle was not voluntary but was in fact coerced by Defendants Pageau and Doherty.

30. Following her interrogation, Defendants Pageau and Doherty, acting with the knowledge and approval of Defendant Gaffney, arrested Nga and charged her with murder. The Defendants did not have a warrant or probable cause for Nga's arrest.

31. The statements made by Nga were subsequently used in court in the prosecution of the criminal charges against her.

32. Nga was held overnight at juvenile detention facility and brought to court on the following day.  On December 3, 2008, the day she turned 17, Nga was taken to the Western Massachusetts Regional Women's Correctional Center in Chicopee, an adult detention facility, where she was held awaiting trial on the murder charge until August 23, 2011.

33. At Chicopee, she was held for months in solitary confinement.  Scared and alone, her world was a seven by twelve foot room behind a metal door, furnished only with a bed and a toilet.  She ate alone in her room and could see visitors only through a heavy glass partition.  When she was later placed in the general population of the jail, she was still locked in a cell for much of the day.

34. On March 12, 2009, evidence of her statement was presented to a grand jury sitting in Worcester Superior Court.  On March 17, 2009, the grand jury returned an indictment under M.G.L. c. 265, § 1 charging her with first degree murder.  Nga was arraigned in Superior Court on March 31, 2009.

35. On September 17, 2010, counsel for Nga filed a motion to suppress all statements made to the police on December 1, 2008 and any evidence obtained as a result of those statements.  A hearing on the motion was held on December 29, 2010.

36. A judge of the Superior Court, after hearing the testimony of Defendant Pageau and viewing a video recording of Nga's interrogation, allowed the motion to suppress on February 25, 2011.  The court ruled that (a) Nga was in custody when she stated that she had killed Khyle, (b) there was no waiver of her Miranda rights, and (c) her statement was not voluntary.

37. On August 23, 2011, the Commonwealth acknowledged that, without the coerced confession, it had no evidence against Nga and filed a *nolle prosequi*.   All charges against Nga were dismissed, and she was released from custody on August 23, 2011.

38. As a direct and proximate result of the Defendants' actions, Nga Truong suffered the injuries and damages, including:

    a. deprivation of her liberty by imprisonment for a period of nearly three years;

    b. physical pain and suffering and emotional trauma which will require the expenditure of money for treatment;

    c. interference with her family relationships;

    d. intrusion into her home, seizure of her personal property and violation of her right to privacy; and

    e. deprivation of the right not to be a witness against herself.

## COUNT I - 42 U.S.C. § 1983
(Defendants Pageau, Doherty and Gaffney)

39. Paragraphs 1 through 38 are incorporated herein by reference as though fully set forth.

40. By coercing a statement which was used against her in court, Defendants Pageau, Doherty and Gaffney deprived Plaintiff Nga Truong of the right guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution not to be compelled to be a witness against herself.

41. By searching her home without a warrant, by arresting her with a warrant or probable cause, and by maliciously causing her to be prosecuted, Defendants Pageau and Doherty deprived Plaintiff Nga Truong of rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be secure in her person and property and to be free from unreasonable searches and seizures.

42. By maliciously causing her to be prosecuted, Defendants Pageau, Doherty and Gaffney deprived Plaintiff Nga Truong of the right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution

43. As a result of these violations of her civil rights, Plaintiff Nga Truong suffered the damages described herein.

## COUNT II - 42 U.S.C. § 1983
(Defendants Gemme and O'Brien)

44. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

45. Defendant Gemme, as Chief of the Worcester Police Department, and Defendant O'Brien, as City Manager of the City of Worcester, are responsible for the training,

supervision and discipline of Worcester police officers, including Defendants Pageau, Doherty and Gaffney.

46. Defendants Gemme and O'Brien failed, with reckless and callous indifference to the violation of individual rights, to provide Defendants Pageau, Doherty and Gaffney with adequate training and supervision with respect to the investigation of infant deaths, the interrogation of juvenile suspects and the lawful conduct of interrogations.

47. By their failure to train and supervise Defendants Pageau and Doherty, Defendants Gemme and O'Brien caused Pageau, Doherty and Gaffney to effect the repeated entry and search of the home of Plaintiff Nga Truong without consent, a warrant or probable cause and to coerce the statement which was used against her in court, in violation of her rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

48. By their course of conduct, Defendants Gemme and O'Brien violated the Plaintiff's right to due process guaranteed by the Fourteenth Amendment to the United States Constitution.

49. As a result of this violation of her civil rights, Plaintiff Nga Truong suffered the damages described herein.

**COUNT III - 42 U.S.C. § 1983**
(City of Worcester)

50. Paragraphs 1 through 49 are incorporated herein by reference as though fully set forth.

51. Prior to December 2008, the City of Worcester developed and maintained policies or customs with deliberate indifference to the constitutional rights of persons in Worcester, which caused the violation of Plaintiff's rights.

52. It was the policy, practice and/or custom of the City of Worcester to inadequately supervise and train its police officers, including Defendants Pageau, Doherty and Gaffney, in the conduct of interrogations, the treatment of juvenile suspects, search and seizure and the constitutional limits on those practices. The City failed to monitor interrogation practices and did not require appropriate in-service training of police officers responsible for interrogations.

53. It was the policy, practice and/or custom of the City of Worcester to condone and permit unlawful searches and seizures by Worcester police officers. The City did not investigate documented violations of the Fourth Amendment, did not properly or adequately investigate citizen complaints of unlawful search and thereby encouraged unlawful and unconstitutional actions by Worcester police officers.

54. The customs, policies and practices of the City of Worcester in failing to train and supervise its police officers in condoning and encouraging unlawful searches, caused Pageau, Doherty and/or Gaffney to effect the repeated entry and search of the home of Plaintiff Nga Truong without consent, a warrant or probable cause and to coerce the statement which was used against her in court, in violation of her rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

55. As a result of this violation of her civil rights, Plaintiff Nga Truong suffered the damages described herein.

**COUNT IV  -  Massachusetts Civil Rights Act, M.G.L. c. 12, §§ H-I**
(Defendants Pageau and Doherty)

56. Paragraphs 1 through 55 are incorporated herein by reference as though fully set forth.

57. In forcing from her the statement that she killed her own child, which statement was used against her in court, Defendants Pageau and Doherty, by threats, intimidation and coercion, deprived Plaintiff Nga Truong of the right secured by Article 12 of the Massachusetts Declaration of Rights not to be compelled to accuse or furnish evidence against herself and the right secured by the Fifth and Fourteenth Amendments to the United States Constitution not to be compelled to be a witness against herself.

58.  As a result of these violations of her civil rights, Plaintiff suffered the damages described herein.

**COUNT V  -  False Arrest and False Imprisonment**
(Defendants Pageau, Doherty and Gaffney)

59. Paragraphs 1 through 58 are incorporated herein by reference as though fully set forth.

60. Defendants Pageau, Doherty and Gaffney arrested and imprisoned the Plaintiff without probable cause.

61. As a result of this false arrest and false imprisonment, Plaintiff Nga Truong suffered the damages described herein.

## COUNT IV  -  Malicious Prosecution
(Defendants Pageau, Doherty, Gaffney and Gemme)

62. Paragraphs 1 through 61 are incorporated herein by reference as though fully set forth.

63. Defendants Pageau, Doherty, Gaffney and Gemme instituted with improper purpose and without probable cause criminal proceedings against Plaintiff, which caused her to be incarcerated awaiting trial for over two-and-one-half years and which violated Plaintiff's Fourth, Fifth, and Fourteenth Amendments.

64. The criminal proceeding was terminated in Plaintiff's favor.

65. As a result of this malicious prosecution, Plaintiff Nga Truong suffered the damages described herein..

## COUNT VII  -  Intentional Infliction of Emotional Distress
(Defendants Pageau, Doherty and Gaffney)

66. Paragraphs 1 through 65 are incorporated herein by reference as though fully set forth.

67. By their course of conduct, Defendants Pageau, Doherty and Gaffney intentionally inflicted emotional distress on the Plaintiff.

68. As a result of this intentional infliction of emotional distress, Plaintiff Nga Truong suffered the damages described herein.

**DEMAND FOR RELIEF**

WHEREFORE, the Plaintiff requests that this Court:

1. Award compensatory damages to Plaintiff against the Defendants, jointly and severally;
2. Award punitive damages against Defendants Pageau, Doherty, Gaffney, Gemme and O'Brien;
3. Award costs of this action to Plaintiff;

4. Award reasonable attorneys' fees; and
5. Award such other and further relief as this Court may deem appropriate.

                                      NGA TRUONG
                                      By her attorneys,

    /s/ Edward P. Ryan, Jr.
Edward P. Ryan, Jr.  BBO # 434960
O'Connor and Ryan, P.C.
61 Academy Street
Fitchburg, MA
(978) 345-4166
edryan@oconnorandryan.com

    /s/ John C. Reinstein
John C. Reinstein  BBO # 416120
51 Abbottsford Road
Brookline, MA 02446
(617) 515-7986
jcreinstein@gmail.com

    /s/ George F. Gormley
George F. Gormley  BBO # 204140
George F. Gormley, P.C.
755 East Broadway
South Boston MA 02127
617-268-2999
gfgormley@aol.com

CERTIFICATE OF SERVICE

    I hereby certify that on May 19, 2015 the foregoing Amended Complaint was served electronically on all counsel of record through ECF.

                                                                       /s/ John C. Reinstein